IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH T. MEHOLICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06-108J |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM JUDGMENT ORDER

AND NOW, this 24th day of April, 2007, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 7) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007, succeeding JoAnne B. Barnhart.

substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Farqnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well-settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed an application for DIB on July 15, 2004, alleging disability beginning June 15, 1997, due to back problems, gout and status post kidney removal following cancer. Plaintiff's application was denied. At plaintiff's request, an ALJ held a hearing on October 31, 2005, at which plaintiff appeared represented by counsel. On December 20, 2005, the ALJ issued a decision finding that plaintiff was not disabled through the date that he was last insured for DIB purposes, which was September 20, 2003. The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff was 46 years old at the time of the ALJ's decision and is classified as a younger individual under the regulations. 20 C.F.R. §404.1563(c). Plaintiff has a tenth grade education. Plaintiff has past relevant work experience as a music store

%AO 72
(Rev. 8/82)

- 2 -

owner/operator and warehouseman/laborer, but he did not engage in substantial gainful activity during the relevant time period.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff was not disabled within the meaning of the Act prior to the expiration of his insured status. The ALJ found that although the medical evidence established that plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine with spondylolisthesis, gouty arthritis and the residuals of a left nephrectomy resulting from renal carcinoma, those impairments alone, or in combination, did not meet or equal the criteria of any of the listed impairments set forth in Appendix 1, 20 C.F.R., Subpart P, Regulation No. 4 (hereinafter, "Appendix 1").

The ALJ found that plaintiff retained the residual functional capacity to perform sedentary work with certain additional limitations. Plaintiff was limited to occasional balancing, stooping, kneeling, crawling and climbing stairs and ramps, and he was required to avoid crouching and climbing ladders, ropes and scaffolds. Plaintiff also was required to avoid concentrated exposure to extreme cold, wetness and vibration. Finally, he required work that did not involve repetitive bending or twisting, static standing or sitting or sustained walking (collectively, the "RFC Finding"). As a result of these limitations, the ALJ determined that plaintiff could not perform his past relevant work. Nonetheless, based upon the vocational expert's testimony,

the ALJ concluded that plaintiff's age, educational background, work experience and residual functional capacity enabled him to make a vocational adjustment to other work that existed in significant numbers in the national economy, such as a hand mail sorter, folding machine operator, monitor operator or labeler/pricer. Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act prior to the date he was last insured.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

To regularize the adjudicative process, the Commissioner has promulgated regulations that govern the evaluation of disability. 20 C.F.R. §§404.1501-.1598. The process is sequential and follows a "set order" of inquiries. 20 C.F.R. §404.1520(a)(4). The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past

relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and residual functional capacity. Id.; see also Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1520(a)(4); see Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982).

In this case, plaintiff challenges the ALJ's findings at step 5 of the sequential evaluation process. At step 5, the Commissioner must show that there are other jobs that exist in significant numbers in the national economy which the claimant can perform consistent with his age, education, past work experience and residual functional capacity. 20 C.F.R. §404.1520(g)(1). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §404.1545(a)(1); Fargnoli, 247 F.3d at 40. In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements and other functions. 20 C.F.R. §404.1545(a)(4).

Here, plaintiff alleges that the ALJ's step 5 finding is not based on substantial evidence because he gave inadequate weight to the opinion of Dr. Daniel Gordon, who was his primary care physician, as well as Dr. Garrett Dixon, who was his treating physiatrist. A treating physician's opinion on the nature and severity of a claimant's impairment will be given controlling

weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other evidence of record. 20 C.F.R. §404.1527(d)(2); Fargnoli, 247 F.3d at 43. In accordance with this standard, the ALJ properly analyzed and weighed the opinions of plaintiff's treating physicians.

Contrary to plaintiff's assertion, the ALJ did not discount Dr. Dixon's opinion. The ALJ discussed Dr. Dixon's findings (R. 16), including his opinion that plaintiff was limited to sedentary or light work activities. (R. 159, 217). Consistent with Dr. Dixon's opinion, the ALJ's RFC Finding limited plaintiff to sedentary work. In addition, the ALJ incorporated into the RFC Finding certain restrictions identified by Dr. Dixon, such as plaintiff's need to avoid repetitive bending, twisting, static standing and sitting and sustained walking, as well as climbing and crouching. (R. 15, 217). The ALJ relied on Dr. Dixon's assessment of plaintiff's capabilities, thus there is no merit to plaintiff's argument that the ALJ did not give proper weight to his opinion.

Likewise, the ALJ properly evaluated and weighed Dr. Gordon's opinion. The ALJ discussed plaintiff's treatment history with Dr. Gordon, as well as the doctor's treatment notes. (R. 16-17). The ALJ explained that he gave limited weight to Dr. Gordon's assessment that plaintiff was an "excellent candidate for disability" because his treatment notes for the period prior to plaintiff's date last insured did not support that conclusion.

(R. 17, 216).

After reviewing the record, the court finds that the ALJ did not err in his treatment of Dr. Gordon's opinion. First, Dr. Gordon's opinion was inconsistent with Dr. Dixon's opinion that plaintiff was capable of light or sedentary work, as well as his own treatment notes. (R. 218-24). Second, Dr. Gordon wrote that plaintiff was an "excellent candidate for disability" in a short letter dated October 25, 2005. (R. 216). However, Dr. Gordon's letter does not indicate that plaintiff was disabled prior to the expiration of his insured status on September 20, 2003. Further, in his letter, Dr. Gordon expressed concern about the long-term consequences of plaintiff's kidney removal, stating that he must be careful about any activity that could compromise his remaining kidney such as physical activity or stress. (R. 216). In addition to the fact that Dr. Gordon did not explain the basis for his concern in that regard, his suggestion that plaintiff might need to avoid certain activities is contradicted by the report of Dr. Ralph Miller, plaintiff's treating urologist. Dr. Miller reported that plaintiff recovered well from his kidney removal and was not experiencing any problems. (R. 114). Dr. Miller did not limit plaintiff in any way, nor did he state that plaintiff was disabled. Accordingly, the ALJ properly gave limited weight to Dr. Gordon's opinion that plaintiff was disabled.

After carefully and methodically considering all of the evidence of record and plaintiff's testimony, the ALJ determined

that plaintiff was not disabled within the meaning of the Act prior to the expiration of his insured status. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc:   Querino R. Torretti, Esq.
      600 Main Street
      P.O. Box 218
      Reynoldsville, PA 15851

      John J. Valkovci, Jr.
      Assistant U.S. Attorney
      319 Washington Street
      Room 224, Penn Traffic Building
      Johnstown, PA 15901